UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, *Plaintiff,* v. **JOHN PHILLIP DRAWDY**, *Defendants* | CRIMINAL ACTION NO. 3:17-CR-00905-001-JMC  **SENTENCING MEMORANDUM** |

## INTRODUCTION

Growing up in Lexington, South Carolina, Phillip Drawdy's family was fractured. As a small child, he lived in a home he remembers having no love or sense of family. One of his earliest memories is riding a big wheel around the Carolina Children's Home at age 4. His mother had dropped Phillip and his three siblings off there because she was no longer interested in raising her children.

When Phillip was 10 years old, his aunt was tired of seeing her nieces and nephews raised in an orphanage. She picked them up from the home and did her best to raise them as family. When Phillip's mom finally got back on her feet, he went back to live with her.

Phillip's mother had taken up with a physically abusive man with a raging cocaine addiction. He caused them to lose their house and Phillip, his mother, and his younger sister moved to small trailer. His mother turned to stripping and escorting to make money.

When Phillip was 15 years old, his mother left. Faced with raising his sister by himself, he quit school and got a job. He earned money to feed her, clothe her, and make sure she went to school. While the federal criminal justice machine gears up to impose

one of the harshest sentences available, there was a time when Phillip was a boy in the country raising his sister as he best he could. Those efforts were not wasted. She is now married with children and a stay at home mom. She has a life born of the sacrifices Phillip made when he was just a child himself.

Phillip does not seek sympathy with the story of his childhood. It is meant to show this Court that mercy, and its accompanying redemption, are not wasted on Phillip. He is in front of this Court as a convicted drug dealer. But at one time, he was just a little kid. Yet he was able to exhibit selfless behavior and overcome depression and despair to help his family. Those qualities can be obscured by bad choices, but they do not disappear. Mercy is never wasted, and it certainly would not be wasted on Phillip Drawdy.

## ADVISORY SENTENCING GUIDELINES RANGE

Based almost entirely on his drug weight, Phillip faces 30 years to life under the advisory sentencing guidelines. This is the same sentence a South Carolina murderer would face. It is far more than most other violent crimes in South Carolina carry. For an offender with the minimal criminal history Phillip has, it is the very definition of Draconian. It should be rejected for the injustice it is under the facts of this case (or really, in any case).

## 18 U.S.C. § 3553(a) FACTORS

**Nature and circumstances of the offense and history and characteristics of the Defendant**

1.     Nature and circumstances of the offense

All drug cases are serious. Phillip is not downplaying the seriousness of methamphetamine sales or his personal conduct. But a 30-year sentence in this case, or anything near it, is so disconnected from his conduct it would essentially be an arbitrary

sentence.

Phillip fell in with the co-defendants in this case as a result of heavy drinking and partying. While he does not deny selling drugs, cooperators often make a conspiracy sound like a traditional, vertical business like legitimate companies. It is nothing of the sort.

These conspiracies often involve drug users who can obtain incredibly high quantities of drugs from Georgia suppliers who practically give it to them. They trade the amounts between themselves and sell enough to keep up a fast, partying lifestyle. Even dealers of pound-quantities are often nothing more than small-time drug dealers when methamphetamine is involved.

There are Georgia suppliers, and cartel-level distributors, who would face a similar sentence as Phillip. As discussed later, the methamphetamine laws and sentencing guidelines create results so disconnected from reality it is appropriate to disregard them to extent allowed by the United States Supreme Court.

Nothing in this offense warrants a 30-year sentence. The mandatory minimum decade in federal prison is a significant amount of time in jail and would serve the sentencing goals in the federal system.

2.     History and characteristics of the Defendant

Phillip's life did not end after the childhood described in the opening paragraph. After his sister was taken care of, he lived on his own. By age 21 he bought a house and soon had two daughters and a son.

Phillip has several convictions from his youth. None are violent, none are serious, and all are reflective of the indiscretions of a young man with no role model or guidance. He used cocaine and occasionally methamphetamine, but it was not an addiction, nor did

it have a serious impact on his life.

In recent years, Phillip's troubles became more concerning. He and his wife separated, and she eventually passed away from complications with diabetes. Phillip began drinking heavily. He descended into a much darker lifestyle. His alcohol use led to more drug use which eventually led to selling methamphetamine. As often happens in the methamphetamine trade, he was soon dealing with weight far beyond that which he had any business dealing with.

Nothing in Phillip's history suggests 30 years would be an appropriate sentence nor would it serve any real purpose.

3.     Respect for the law

To promote respect for the law, a sentence must consider the defendant's actual conduct. The United States Supreme Court has approved a district court's recognition that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States,* 552 U.S. 38, 54 (2007).

The sentence recommended in the PSR would certainly deride the law. Phillip has a relatively small criminal record. His behavior, while illegal, is still very close to street dealing. Nothing about a 30-year sentence would take into account his real conduct in this case.

4.     Just punishment

Justice is an elusive concept. Before every federal sentence, counsel searches precedent for some satisfying definition of justice. Counsel never finds one. Maybe there

is not one. Abraham Lincoln found that "mercy bears richer fruits than strict justice."[1] At least some part of justice must involve mercy, or it simply is not justice.

**To afford adequate deterrence to criminal conduct**

General and specific deterrence are important parts of a criminal sentence. Both can be served in this case without a harsh sentence. In general, most sentences of this nature will be significant, even if merciful. There is no need to send a stronger message than has already been sent.

**To protect the public from further crimes of the Defendant**

Nothing in the current case or in Phillip's history suggests he will be a danger to the public in the future. Even if this Court grants a variance and imposes an appropriately merciful sentence, Phillip will most likely be in his late 40s or early 50s when released from any sentence.

The United States Sentencing Commission has extensively researched recidivism factors, especially age.[2] It is well-settled age is a significant factor for recidivism. As an offender passes 40-years old and approaches 50, the risk of recidivism sharply declines. For someone with a low criminal history, like Phillip, the decline is even sharper.

Considered, scientific research by the United States Sentencing Commission suggests Phillip has a very low risk of re-offending after this sentence.

**Need for educational/vocational training, medical care, or other corrective treatment**

Phillip dropped out of high school and does not currently have a GED. He has worked in the flooring industry and gained extensive experience over the years. He is a

---

[1] See history of this quote at: https://www.the-american-catholic.com/2016/04/05/lincoln-on-mercy/ (last accessed March 25, 2019).
[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (last accessed January 4, 2019)

skilled tradesman and with additional education, he should require no further education or training in prison.

### **POLICY REASONS TO DISREGARD THE ADVISORY GUIDELINES**

The Court can vary from the guideline when it has a policy disagreement with those guidelines. *Spears v. United States,* 555 U.S. 261, 263-67 (2009); *United States v. Kimbrough,* 552 U.S. 85, 109-10 (2007).[3] *Spears* made it clear "a guideline may be rejected on categorical, policy grounds, even in a mine-run case, and not simply based on an individualized determination that it yields an excessive sentence in a particular case." *Spears,* 555 U.S. at 262.

In other words, a district court can reject a guidelines sentence in a case based on a general disagreement with the guideline, a specific disagreement with a particularly harsh sentence in a case, or both. A policy disagreement most often arises in cases where the sentence does not reflect the Sentencing Commission's "characteristic institutional role." *Kimbrough,* 552 U.S. at 89.

The methamphetamine guidelines are not a result of the Commission's historic role. Rather, the guidelines were anchored to congressionally-established mandatory minimums. There is a stark difference between the role of the Commission and that of Congress. While the Commission's guidelines sentences are intended to be a system of finely calibrated sentences, mandatory minimums are far less fine-tuned, resulting in a system both structurally and functionally at odds with the guidelines and their goals. *Neal v. United States,* 526 U.S. 284, 291-92 (1996).

A simple example makes this apparent. U.S.S.G. §2D1.1(c)(1), lists the drugs

---

[3] The following argument is laid out in far more detail, and far more eloquently, by the Honorable Mark Bennett in *United States v. Hayes,* 948 F.Supp.2d 1009 (N.D.Iowa June 7, 2013).

subject to a base level 38. Meth is treated ten times more harshly then powder cocaine and twice as harshly as both heroin and PCP. While this matches the mandatory minimums issued by Congress, it does not appear to reflect any real-world difference in the dangerousness of the drugs. Instead, it simply reflects Congress's different mandatory minimums. Unlike the Sentencing Commission, Congress is primarily concerned with politics, not empirical data supporting the most realistic sentencing picture.

One explanation might be that meth is a more dangerous drug, based on anecdotal observations throughout the criminal justice system. There seems to be an explosion of meth and related crimes. However, this is simply a reflection of the drug's popularity. As of fiscal year 2016, a third of all drug offenders in federal court were involved with methamphetamine.[4] This is a marked increase from 2010, where crack was the prevalent drug. And crack was formerly viewed with the same concerns as meth is now.

In reality, there is little difference between the detrimental effects of the harder drugs. Is it realistic to claim meth use is ten times more dangerous than cocaine? Or heroin? A tenfold increase in sentencing should reflect a tenfold increase in danger. Anything else is arbitrary and risks a disconnect with the true goals of federal sentencing; a sentence sufficient but not greater than necessary. In other words, just enough. No more and no less.

The Court should take into account the meth guidelines departure from the historical role of the Sentencing Commission and, in combination with the other factors cited here, impose a variance sentence.

---

[4] *Mandatory Minimum Penalties for Drug Offenses in the Federal Criminal Justice System,* United States Sentencing Commission, October 2017, p.21, located at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171025_Drug-Mand-Min.pdf#page=15 (last accessed January 4, 2019)

## CONCLUSION

The advisory guidelines in this matter are far beyond a just sentence. Defendant respectfully requests this Court grant a variance sentence.

Respectfully Submitted,

s/ Joshua Snow Kendrick
Joshua Snow Kendrick (Fed ID 9037)
KENDRICK & LEONARD, P.C.
506 Pettigru Street (29601)
P.O. Box 6938
Greenville, SC 29606
Tel: (864) 760-4000
Josh@KendrickLeonard.com

March 25, 2019
Greenville, South Carolina