```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF SOUTH CAROLINA
 2                      COLUMBIA DIVISION

 3
         UNITED STATES OF AMERICA,  )
 4                                  )
                  PLAINTIFF,        )
 5                                  )
                  -VERSUS-          )     3:17-CR-00905
 6                                  )     MARCH 27, 2019
         JOHN PHILLIP DRAWDY,       )     COLUMBIA, SC
 7                                  )
                  DEFENDANT.        )
 8       _____)

 9

10           BEFORE THE HONORABLE J. MICHELLE CHILDS
             UNITED STATES DISTRICT JUDGE, PRESIDING
11                    SENTENCING HEARING

12
         A P P E A R A N C E S :
13

14       FOR THE GOVERNMENT:     ALYSSA RICHARDSON, AUSA
                                 UNITED STATES ATTORNEY'S OFFICE
15                               1441 MAIN STREET, SUITE 500
                                 COLUMBIA, SC  29201
16
         FOR THE DEFENDANT:      JOSHUA KENDRICK, ESQ.
17                               KENDRICK AND LEONARD
                                 PO BOX 6938
18                               GREENVILLE, SC  29606

19       COURT REPORTER:         KATHLEEN RICHARDSON, RMR, CRR
                                 UNITED STATES COURT REPORTER
20                               901 RICHLAND STREET
                                 COLUMBIA, SC 29201
21

22             STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

23                      *** *** *** ***

24

25
```

1          *THE COURT:* GOOD MORNING. GOVERNMENT?

2          *MS. RICHARDSON:* GOOD MORNING, YOUR HONOR. THE

3   CASE BEFORE YOU IS UNITED STATES OF AMERICA VERSUS JOHN

4   PHILLIP DRAWDY, CRIMINAL DOCKET NUMBER 3:17-905. WE ARE HERE

5   FOR MR. DRAWDY'S SENTENCING. THERE IS -- HAS BEEN A

6   PRETRIAL -- OR EXCUSE ME -- A SENTENCING REPORT PREPARED IN

7   THIS CASE AND THERE ARE NO OBJECTIONS.

8          *THE COURT:* THANK YOU. MR. DRAWDY, IF YOU WOULD

9   PLEASE STAND AND BE SWORN IN.

10          JOHN PHILLIP DRAWDY, AFTER BEING DULY SWORN,

11   TESTIFIED AS FOLLOWS:

12          *THE COURT:* HAD THE OPPORTUNITY TO GO OVER YOUR

13   PRESENTENCE REPORT WITH YOUR ATTORNEY?

14          *THE DEFENDANT:* YES, MA'AM.

15          *THE COURT:* AND YOU UNDERSTAND THAT THERE ARE NO

16   OBJECTIONS TO THE REPORT EITHER FACTUALLY OR LEGALLY?

17          *THE DEFENDANT:* YES, MA'AM.

18          *THE COURT:* OKAY. ALL RIGHT. SO THE COURT WILL

19   ADOPT THE REPORT IN FULL. I REMIND YOU THAT YOU PLED GUILTY

20   ON APRIL 30, 2018 TO CONSPIRACY TO POSSESS WITH INTENT TO

21   DISTRIBUTE AND TO DISTRIBUTE 50 GRAMS OR MORE OF

22   METHAMPHETAMINE AND 500 GRAMS OR MORE OF A MIXTURE OR

23   SUBSTANCE CONTAINING METHAMPHETAMINE.

24      IS THAT WHAT YOU RECALL?

25          *THE DEFENDANT:* YES, MA'AM.

1          *THE COURT:*  AND YOU DID SO PURSUANT TO A PLEA

2    AGREEMENT, AND THE COURT ADOPTS THAT PLEA AGREEMENT.  SO I'LL

3    NOW GO OVER YOUR SENTENCING GUIDELINE CALCULATION WITH YOU.

4    FOR THAT PARTICULAR OFFENSE YOUR GUIDELINE CALCULATION WOULD

5    BE A BASE OFFENSE LEVEL OF 38 IN THAT THIS IN THE MARIJUANA

6    EQUIVALENT EQUALS AT LEAST 90,000 KILOGRAMS OR MORE OF

7    MARIJUANA AND THEN YOU HAD TWO LEVELS INCREASED IN THAT THERE

8    WAS A DANGEROUS WEAPON INCLUDING A FIREARM WAS POSSESSED, AN

9    ADDITIONAL TWO-LEVEL INCREASE IN THAT YOU, KNOWING THAT AN

10   INDIVIDUAL WAS LESS THAN 18 YEARS OF AGE, DISTRIBUTED A

11   CONTROLLED SUBSTANCE TO THAT INDIVIDUAL OR INVOLVED THAT

12   INDIVIDUAL IN THE OFFENSE.

13        THEN THERE WERE ANOTHER TWO LEVELS IN THAT YOU WERE

14   CONSIDERED AN ORGANIZER, LEADER, MANAGER, OR SUPERVISOR IN

15   THE CRIMINAL ACTIVITY.  SO ADDING ALL OF THOSE UP, THAT GAVE

16   YOU AN ADJUSTED OFFENSE LEVEL OF 44.  YOU GOT TWO LEVELS FOR

17   ACCEPTING RESPONSIBILITY CREDITED TO YOU AND THEN AN

18   ADDITIONAL CREDITED TO YOU FOR ENTERING A TIMELY GUILTY PLEA

19   FOR A TOTAL OFFENSE LEVEL OF 41.

20        AND THEN THESE GUIDELINE CALCULATIONS HAVE BEEN

21   CALCULATED AFTER THE FIRST STEP ACT WHICH WENT INTO EFFECT,

22   AND SO THESE ARE BASED ON YOUR NEW GUIDELINE CALCULATIONS.

23        UNDER THE STATUTE PREVIOUSLY YOUR MANDATORY MINIMUM WAS

24   20 YEARS UP TO LIFE IMPRISONMENT.  NOW IT'S 10 YEARS UP TO

25   LIFE IMPRISONMENT FOLLOWED BY SUPERVISED RELEASE OF AT LEAST

4

```
 1   FIVE YEARS, PROBATION IS PROHIBITED, A FINE OF UP TO

 2   $10 MILLION, A SPECIAL ASSESSMENT FEE OF A HUNDRED DOLLARS.

 3        THE NEW GUIDELINE CALCULATION WITH THAT TOTAL OFFENSE

 4   LEVEL 41, CRIMINAL HISTORY CATEGORY OF THREE, IT STILL MAKES

 5   YOU INELIGIBLE FOR PROBATION, BUT INSTEAD BE IN ZONE D WHERE

 6   A PERIOD OF INCARCERATION IS REQUIRED, AND IT RECOMMENDS 360

 7   MONTHS UP TO LIFE IMPRISONMENT, FIVE YEARS OF SUPERVISED

 8   RELEASE, NO FINE DUE TO YOUR INABILITY TO PAY, RESTITUTION IS

 9   NOT APPLICABLE IN THIS CASE, AND STILL THE $100 SPECIAL

10   ASSESSMENT FEE.

11        IS THAT WHAT YOU UNDERSTAND NOW?

12             THE DEFENDANT:  YES, MA'AM.

13             THE COURT:  OKAY.  AND OF COURSE YOUR LAWYER HAS

14   FILED A SENTENCING MEMORANDUM REQUESTING A VARIANCE AND WE

15   WILL GO OVER THAT MOMENTARILY.  FOR NOW YOU CAN HAVE A SEAT

16   AND WE'LL HEAR THE GOVERNMENT WITH RESPECT TO THEIR

17   PRESENTATION ON THE SENTENCING FACTORS.

18             MS. RICHARDSON:  YES, YOUR HONOR.  THE GOVERNMENT

19   IS REQUESTING A GUIDELINE SENTENCE FOR MR. DRAWDY.  YOUR

20   HONOR, I'LL BEGIN WITH THE FACTS OF THIS CASE.  YOUR HONOR,

21   OBVIOUSLY THEY ARE SET FORTH IN THE PSR.  BUT ONE THING I

22   WOULD LIKE TO POINT OUT, I WAS I BELIEVE EVEN HANDED A LETTER

23   FROM ONE OF THE WITNESSES HERE TODAY --

24             THE COURT:  YES.

25             MS. RICHARDSON:  -- MR. DRAWDY'S SON.  YOUR HONOR,
```

1    I WOULD POINT OUT IN PARAGRAPH 35 OF THE PSR ONE OF THE

2    CONTROLLED BUYS FOR WHICH THAT -- FOR WHICH WE CHARGED

3    MR. DRAWDY WITH, WE CHARGED HIM WITH A NUMBER OF CONTROLLED

4    BUYS FOR THE SALE OF COCAINE, FOR THE SALE OF

5    METHAMPHETAMINE, FROM HIS OVERALL ROLE IN THE CONSPIRACY.

6         YOUR HONOR, I WOULD JUST POINT OUT WITHIN THAT

7    PARAGRAPH, WITHIN THAT SAME CONTROLLED BUY MR. DRAWDY USES

8    HIS SON TO HELP FACILITATE THAT DRUG PURCHASE.  AGAIN IN

9    PARAGRAPH 35 PROBATION SETS FORTH THE FACTS WHICH ARE THE

10   CONFIDENTIAL SOURCE IS THERE TO PURCHASE DRUGS AND MR. DRAWDY

11   USES HIS SON TO GO AND GET MONEY TO -- MONEY TO HELP EXCHANGE

12   AND FACILITATE THE SALE OF THOSE, OF THOSE NARCOTICS.

13        SO YOUR HONOR, I JUST START THERE TO GO TO THE NATURE

14   AND CIRCUMSTANCES OF THESE OFFENSES.  THEY ARE DRUG OFFENSES

15   AND THE GOVERNMENT'S POSITION IS THAT THESE ARE SERIOUS

16   OFFENSES.  MR. DRAWDY WAS ARRESTED AND FOUND IN POSSESSION OF

17   TWO FIREARMS.  ONE OF THOSE FIREARMS WAS IN HIS SON'S

18   BEDROOM.

19        YOUR HONOR, I BEGIN MY PRESENTATION HERE BECAUSE I

20   BELIEVE THAT IS IMPORTANT TO CONSIDER THE PARTICULAR

21   CHARACTERISTICS OF THIS DEFENDANT; NOT JUST A DRUG DEALER BUT

22   SOMEONE WHO USES HIS SON, USES HIS SON'S BEDROOM, USES HIS

23   SON TO HELP HIM IN THE SALE OF NARCOTICS.

24        YOUR HONOR, WITH RESPECT TO WHERE THIS DEFENDANT FALLS

25   IN THIS OVERARCHING DRUG CONSPIRACY, I HAVE SAID BEFORE AND I

1    WILL SAY AGAIN, MR. DRAWDY IS AT THE TOP. THAT IS WHY THE

2    GOVERNMENT IS REQUESTING A GUIDELINE SENTENCE. THAT IS WHY

3    THE GOVERNMENT HAS NOT MADE ANY MOTION FOR A DOWNWARD

4    DEPARTURE OR ANYTHING OF THAT NATURE IN THIS CASE.

5        THIS CASE STARTED WITH A COMPLAINT. WE DID A COMPLAINT

6    FOR MR. DRAWDY. AND FROM THAT COMPLAINT WE INDICTED THREE

7    OTHERS UNDER THIS SAME CASE NUMBER; THAT WOULD BE

8    MS. HARTLEY, MR. SMITH, AND MR. MCCAMY. MS. HARTLEY AND

9    MR. SMITH HAVE BOTH BEEN SENTENCED AS YOU KNOW, YOUR HONOR.

10   YOU SENTENCED MS. HARTLEY TO 151 MONTHS AND THAT SENTENCE WAS

11   BASED ON HER SIGNIFICANT COOPERATION AND ALSO A SOMEWHAT OF A

12   CONCESSION AND NEGOTIATION BASED ON THAT COOPERATION.

13       MR. BLAKE SMITH, YOU SENTENCED HIM TO 188 MONTHS. AND

14   YOUR HONOR, AGAIN THAT SENTENCE WAS BASED BY THE GOVERNMENT

15   PUTTING FORTH THAT MR. BLAKE SMITH WAS AGAIN SOMEONE WHO

16   COOPERATED. SO JUST TO STOP THERE WITH THOSE, THOSE THREE

17   INDIVIDUALS, MR. DRAWDY, MR. SMITH, AND MS. HARTLEY, YOUR

18   HONOR, I WOULD DISTINGUISH MR. DRAWDY FROM THOSE TWO

19   INDIVIDUALS.

20       AS I SAID BOTH MR. SMITH, BOTH MS. HARTLEY COOPERATED

21   EXTENSIVELY. THEY BOTH TESTIFIED. IF YOU WILL RECALL THE

22   TRIAL IN JANUARY WITH MR. MARCUS YOUNG AND MR. RICO GORDON.

23   BOTH OF THOSE TWO CO-DEFENDANTS TESTIFIED THERE.

24       YOUR HONOR, I WILL -- I WILL TELL YOU THAT THE

25   GOVERNMENT DID MEET WITH MR. DRAWDY. WE DID DISCUSS WHETHER

1   OR NOT WE WOULD CALL HIM TO THE STAND, AND I WILL TELL YOU

2   MR. DRAWDY WAS IN FACT WILLING TO TESTIFY.  HOWEVER, YOUR

3   HONOR, THE PROBLEM THAT THE GOVERNMENT FACED IS THAT

4   MR. DRAWDY ATTEMPTED TO COOPERATE WITH THE GOVERNMENT, YOUR

5   HONOR, BUT LIED SO MANY TIMES AND WENT BACK AND FORTH AS TO

6   WHAT HE WAS SAYING THAT WE -- WE WERE IN THE POSITION THAT IF

7   WE CALLED HIM TO THE STAND, IT WAS GOING TO BE, FOR LACK OF A

8   BETTER WORD, A BRUTAL CROSS-EXAMINATION BASED ON HIS PRIOR

9   STATEMENTS BACK AND FORTH.

10      ADDITIONALLY, YOUR HONOR, AT SOME POINT WE ELECTED UNDER

11  OUR PLEA AGREEMENT TO TRY AND IMPOSE A POLYGRAPH EXAMINATION

12  ON MR. DRAWDY.  AND YOUR HONOR, BEFORE WE COULD EVEN GET TO

13  THAT POLYGRAPH EXAMINATION, MR. DRAWDY TOLD US, YOU GUYS GOT

14  ME, I HAVE LIED EXTENSIVELY.  AND SO WE DIDN'T EVEN GET TO

15  THAT POINT.

16      YOUR HONOR, I PUT ALL THAT ON THE RECORD AND I WILL FOR

17  THE SAKE OF CLARITY SAY WE DID NOT ELECT TO HOLD MR. DRAWDY

18  IN VIOLATION OF HIS PROFFER AGREEMENT.  WE DID NOT ELECT TO

19  HOLD HIM IN VIOLATION OF HIS PLEA AGREEMENT, YOUR HONOR, BUT

20  I OFFER ALL OF THAT INFORMATION AGAIN TO THE PARTICULAR

21  CHARACTERISTICS OF THIS DEFENDANT.

22      NOT ONLY IS HE SOMEONE THAT THE GOVERNMENT AND AGENT

23  HERBERGER, WHO HAS DONE EXTENSIVE WORK ON THIS CASE, NOT ONLY

24  IS HE SOMEONE THAT WE BOTH AGREE WOULD BE AT THE VERY TOP OF

25  THIS DRUG CONSPIRACY -- AND AGAIN, YOUR HONOR, RIGHT NOW WHEN

1    I SAY DRUG CONSPIRACY, I'M ONLY TALKING ABOUT THE FOUR

2    DRAWDY, HARTLEY, MCCAMY AND SMITH THAT WE INDICTED

3    TOGETHER -- WHILE OUR POSITION THAT HE WOULD BE AT THE TOP OF

4    THAT DRUG CONSPIRACY, THAT'S NOT WHERE THIS CASE ENDED, YOUR

5    HONOR.

6        SO AFTER INDICTING THOSE FOUR DEFENDANTS, BASED ON

7    INFORMATION FROM THOSE CASES WE INDICTED ANOTHER 12

8    DEFENDANTS UNDER UNITED STATES VERSUS REDMOND, YOUR HONOR,

9    AGAIN THAT CASE INVOLVING MR. YOUNG AND MR. GORDON.  AND FOR

10   THE RECORD THAT CASE IS UNDER 3:18-628.

11       YOUR HONOR, ANOTHER 12 DEFENDANTS -- AND IT IS THE

12   GOVERNMENT'S POSITION THAT MR. DRAWDY, EVEN WHEN WEIGHING IN

13   THOSE OTHER 12 DEFENDANTS, MR. DRAWDY IS STILL AT THE TOP IN

14   TERMS OF THE INFORMATION WE HAD AS TO HIS ROLE, HIS ABILITY

15   TO DISTRIBUTE AND CORRAL LARGE AMOUNTS OF -- LARGE AMOUNT OF

16   NARCOTICS IN THIS CASE.

17       AND YOUR HONOR, I WOULD POINT OUT THAT MR. DRAWDY'S CASE

18   WAS INDICTED IN 2017 AND WE INDICTED REDMOND IN 2018, SO

19   NATURALLY MR. DRAWDY, MS. MCCAMY, MR. SMITH, MS. HARTLEY,

20   THEIR SENTENCINGS HAVE COME MUCH MORE QUICKLY THAN THE

21   REDMOND DEFENDANTS.

22       BUT I WOULD POINT OUT BECAUSE THEY -- THESE CONSPIRACIES

23   ARE LINKED, I WOULD POINT OUT THAT THOSE WHO FALL BENEATH MR.

24   DRAWDY I WOULD SAY WOULD BE MR. MARCUS YOUNG AND MR. RICO

25   GORDON, WHO YOU KNOW EXTENSIVELY FROM SITTING IN THAT --

9

1    SITTING IN ON THAT TRIAL, YOUR HONOR -- BUT UNDER THAT WOULD

2    BE TERRY MOORE AND BRIAN LORICK, YOUR HONOR.  AND I LOOKED AT

3    THEIR PSR'S THIS MORNING.

4        MS. MOORE IS -- HAS A PSR GUIDELINE RANGE OF 322 TO 387

5    MONTHS.  MR. LORICK HAS A GUIDELINE RANGE OF 228 TO 270

6    MONTHS, YOUR HONOR.  I SAY THAT BECAUSE I BELIEVE

7    MR. DRAWDY'S GUIDELINES, WHILE THEY ARE MUCH HIGHER THAN

8    MR. BLAKE SMITH WHO YOU DID SENTENCE IN THIS CASE, I SAY THAT

9    TO SAY THAT MR. DRAWDY IS STILL PART OF THIS LARGER

10   CONSPIRACY AND HIS GUIDELINES HIT RIGHT IN LINE WITH WHERE WE

11   BELIEVE HE IS BASED ON HIS POSITION IN THE CONSPIRACY.

12       YOUR HONOR, I WILL END MY REMARKS THERE UNLESS YOU HAVE

13   SPECIFIC QUESTIONS FOR ME AT THIS TIME.

14           *THE COURT:*  NOTHING RIGHT NOW.  THANK YOU.

15           *MS. RICHARDSON:*  THANK YOU.

16           *THE COURT:*  ALL RIGHT.  MR. KENDRICK?

17           *MR. KENDRICK:*  THANK YOU, YOUR HONOR.  THERE'S A

18   GOOD BIT THERE TO RESPOND TO, YOUR HONOR, BUT I ALSO -- I

19   WANT TO START WITH THE OVERARCHING ARGUMENT MADE IN OUR

20   SENTENCING MEMORANDUM.  AND IF MY FRUSTRATION WITH THE

21   METHAMPHETAMINE GUIDELINES IS NOT APPARENT FROM THAT MEMO,

22   THEN HOPEFULLY IT WILL BE WHEN I'M DONE TALKING TO YOU TODAY.

23       THE REASON WE MADE THE ARGUMENT WE MADE IS BECAUSE THERE

24   IS NO QUESTION THAT THE GUIDELINES FOR METHAMPHETAMINE ARE

25   THE RESULT OF THE SENTENCING COMMISSION COMPLETELY ABANDONING

1  ITS INSTITUTIONAL ROLE TO RESEARCH AND PROVIDE EMPIRICAL DATA

2  SO THAT WE CAN GET A FINELY-CALIBRATED SET OF SENTENCES.

3      NOWHERE IS THAT MORE APPARENT THAN THE NUMBERS THAT JUST

4  GOT THROWN AT YOU BY THE GOVERNMENT.  WE GOT PEOPLE GETTING

5  151, WE GOT PEOPLE GETTING 324.  MY CLIENT'S AT THE TOP WITH

6  30 TO LIFE WHICH A REPRESENTATIVE OF THE UNITED STATES

7  GOVERNMENT SAYS WITH A STRAIGHT FACE IS A PERFECTLY

8  APPROPRIATE SENTENCE FOR DRUG DEALING, AND IT'S NOT.

9      THE GUIDELINES FOR METHAMPHETAMINE DON'T MAKE ANY SENSE

10  WHICH MEANS THE DISPARITY THAT MAY BE ARGUED TO YOU ALSO

11  DOESN'T MAKE ANY SENSE.  IT SIMPLY DOESN'T MATTER.  YOUR

12  HONOR, 30 YEARS TO LIFE IN PRISON FOR SELLING DRUGS IS NEVER

13  GOING TO MAKE ANY SENSE.  IF MR. DRAWDY WAS IMPORTING THESE

14  DRUGS ACROSS THE BORDER IN A TRACTOR-TRAILER STRAIGHT FROM

15  THE CARTEL, THAT IS A SENTENCE HE WOULD FACE.

16      AND IT DOESN'T MAKE ANY SENSE THAT THERE'S NO ABILITY TO

17  DRAW A DISTINCTION BECAUSE THE GUIDELINES ROCKET TO THE TOP

18  SO FAST BASED NOT ON THE COMMISSION FINDING THAT THERE'S SOME

19  ADDITIONAL DANGER, NOT ON THE COMMISSION FINDING THAT A

20  MINE-RUN OR A HEARTLAND CASE CREATES AN INCREDIBLY DANGEROUS

21  SITUATION AS OPPOSED TO OTHER DRUGS, BUT RATHER BECAUSE

22  CONGRESS DECIDED IT BECAUSE JUST LIKE IN THE 80'S WHEN CRACK

23  COCAINE WAS THE HOT POLITICAL MOVE, CONGRESS MADE SILLY

24  SENTENCES FOR CRACK COCAINE, THEY DID THE SAME THING WITH

25  METH.

1      I SAT IN A COURTROOM YESTERDAY TALKING TO BOTH A

2  PROSECUTOR AND A DEFENSE LAWYER ABOUT THE DRUG PROBLEM IN THE

3  UPSTATE, WHICH IS PRIMARILY CENTERED ON METHAMPHETAMINE.

4  THERE ISN'T A SOLUTION THAT IS GOING TO COME OUT OF THIS

5  COURTROOM.

6      SO TO THE EXTENT WE THINK WE CAN 30-YEAR-AWAY AT A TIME

7  METHAMPHETAMINE ISN'T GOING TO HAPPEN.  AND I TELL YOU THAT

8  BECAUSE I'M GOING TO ASK YOU FOR A SIGNIFICANT DEPARTURE,

9  VARIANCE.  I DON'T CARE WHAT THE OTHER PEOPLE GOT.  I DON'T

10  CARE WHO IN THIS CONSPIRACY GOT WHAT THEY GOT, THEY SHOULDN'T

11  HAVE GOTTEN, IT'S TOO HIGH.  THERE'S NO QUESTION IF THEY WERE

12  SENTENCED UNDER THE GUIDELINES, THEN IT WAS TOO HIGH A

13  SENTENCE.  IF THEY GOT AWAY FROM THE GUIDELINES, THEN

14  HOPEFULLY INDIVIDUAL SENTENCES WORK OUT FOR VARIOUS REASONS;

15  WHETHER IT'S PRIOR RECORD, TIME IN PRISON, THINGS LIKE THAT.

16      MR. DRAWDY ARGUABLY PUT HIMSELF IN A DIFFICULT POSITION

17  EXACTLY THE WAY THE US ATTORNEY JUST DESCRIBED; BY COMING IN

18  TO COOPERATE AND NOT DOING WHAT HE WAS SUPPOSED TO DO.  I

19  WOULD TAKE THE POSITION THAT HE REPEATEDLY MINIMIZED.  I

20  DON'T THINK THERE WERE TIMES HE LIED OUT-RIGHT, BUT IN

21  GENERAL HE WAS TRYING TO SHIFT BLAME OFF OF HIMSELF, OFF

22  PEOPLE CLOSE TO HIMSELF.

23      HE EXPLAINED THAT DURING THE LAST MEETING WE HAD PRIOR

24  TO THIS TRIAL WHEN HE SAID TWO THINGS HAD HAPPENED AFTER HIS

25  ARREST.  HE AND HIS FAMILY HAD BEEN THREATENED.  I HAVE

1    GOTTEN THOSE PHONE CALLS FROM BOTH HIS SON AND HIS FORMER

2    GIRLFRIEND.  I HAVE DIRECTED THEM TO CALL THE ATF OR THE

3    POLICE DEPARTMENT.  BUT HE ALSO SAID HE WAS TOLD, LOOK, WE

4    ARE GOING TO TAKE CARE OF YOU IF YOU JUST KEEP YOUR MOUTH

5    SHUT, DON'T TELL US ON.

6        WE HAVE NEVER GONE ANY FURTHER WITH THAT BECAUSE I THINK

7    IT'S EVIDENT THE GOVERNMENT DOESN'T HAVE ANY INTEREST IN

8    DEALING WITH HIM, AND THAT'S THEIR PREROGATIVE.  BUT THERE

9    WERE TWO THINGS, BOTH THREATS AND PROMISES OF HELP, THAT WERE

10   MADE TO HIM THAT NEITHER ONE HAPPENED.  AND HAD HE TOLD ME

11   ABOUT THAT, I WOULD HAVE SAID, PHILLIP, THAT'S THE DUMBEST

12   THING I'VE EVER HEARD OF; THOSE PEOPLE AREN'T GOING TO DO

13   ANYTHING TO YOU AND THEY ARE NOT GOING TO HELP YOU.

14       BUT I DIDN'T KNOW ABOUT THEM.  AND I -- SO WE KIND OF --

15   THE SITUATION GOT WORSE AND WORSE AND HE FINDS HIMSELF

16   GETTING ZERO HELP FROM THE GOVERNMENT.  HE WAS WILLING TO

17   TESTIFY.  I ALWAYS THINK IT PUTS ME IN AN AWKWARD POSITION

18   WHEN SOMEBODY SAYS, WELL, WE DIDN'T WANT TO CALL HIM TO

19   TESTIFY BECAUSE HE HAD LIED IN THE PAST AND WOULD HAVE BEEN

20   SUBJECTED TO A BRUTAL CROSS-EXAMINATION BECAUSE I HAVE

21   CONDUCTED THAT BRUTAL CROSS-EXAMINATION.

22       I HAVE DONE IT ON PEOPLE THAT WERE FAR WORSE OFF IN

23   THEIR PAST THAN MR. DRAWDY.  THE JURIES CONVICT, MY CLIENT

24   GETS A MILLION MONTHS IN PRISON, THAT GUY GETS TWO MONTHS,

25   AND EVERYBODY WALKS AWAY HAPPY.  SO, I THINK MR. DRAWDY HAS

1    FRUSTRATED THE GOVERNMENT, AND THAT'S UNFORTUNATE.  THAT'S

2    UNFORTUNATE FOR HIM.

3         THE CONSPIRACY THAT WE ARE TALKING ABOUT -- AND YOUR

4    HONOR HAS HEARD ME TALK ABOUT THIS -- IT IS A TYPICAL

5    METHAMPHETAMINE CONSPIRACY.  AND WE MENTIONED IN THE

6    SENTENCING MEMORANDUM, IT IS NOT VERTICAL.  IT IS NOT -- YOU

7    KNOW, I THINK THERE IS A SHIPMENT THAT COMES FROM TYPICALLY

8    MEXICO TO SOMEWHERE LIKE ATLANTA, AND THEN FROM ATLANTA IT

9    GETS DISTRIBUTED.  BUT IT ENDS IN ATLANTA AS TO WHERE PEOPLE

10   FALL IN A LINE GOING UP OR DOWN A CONSPIRACY.

11        I DON'T KNOW WHY BECAUSE I HAVEN'T STUDIED IT CAREFULLY,

12   BUT I KNOW THAT THE PEOPLE I REPRESENT THAT END UP WITH VERY,

13   VERY LARGE AMOUNTS OF METHAMPHETAMINE THERE'S VERY LITTLE

14   DIFFERENCE BETWEEN IMPORTERS, BETWEEN LARGE DISTRIBUTORS, AND

15   THEN FOLKS WHO SELL ON THE STREET.  I DON'T THINK MR. DRAWDY

16   WAS A WHOLE LOT HIGHER THAN A STREET-LEVEL DEALER.  HE WAS

17   HIGHER BUT NOT TO THE EXTENT THAT SOMEHOW WE WOULD PUT HIM IN

18   PRISON FOR LIFE.

19        I THINK WHERE WE END UP HERE, YOUR HONOR, AND I DON'T

20   MEAN TO IN ANY WAY INSULT THE COURT, BUT I DO -- WHEN I'M

21   TALKING STRONGLY ABOUT THIS, I DEEPLY BELIEVE THAT

22   WAREHOUSING PEOPLE FOR LIFE FOR DRUG DEALING SIMPLY

23   DOESN'T -- IT DOESN'T SERVE ANY OF THE SENTENCING PURPOSES.

24        IF MR. DRAWDY HAD A PERFECTLY CLEAR HISTORY AND

25   CIRCUMSTANCES, THEN HE WOULDN'T BE HERE BECAUSE HE WOULDN'T

1    HAVE BEEN SOMEONE WHO HAD TO PLEAD GUILTY TO A FEDERAL

2    CRIMINAL CHARGE.  IF THIS CONSPIRACY DIDN'T HAVE SOME LEVEL

3    OF SERIOUSNESS, HE WOULDN'T BE HERE.

4        SO THOSE FACTORS ALONE DON'T -- DON'T REALLY HAVE ANY

5    SIGNIFICANCE ONE WAY OR THE OTHER.  IN THIS CASE I THINK SOME

6    OF THE MORE INTANGIBLE FACTORS THAT WE ARGUE ABOUT THE SEARCH

7    FOR A JUST SENTENCE, ABOUT TRYING TO IMPOSE SOMETHING THAT

8    MAKES SENSE, THOSE DO APPLY.

9        AND I THINK A SENTENCE FAR BELOW 360 MONTHS IS

10   APPROPRIATE.  I WOULD ASK YOUR HONOR TO CONSIDER SOMETHING IN

11   THE NEIGHBORHOOD OF THIS PERSON WHO GOT 151 MONTHS.  THAT'S A

12   LONG TIME IN PRISON.  I DON'T CARE WHAT ANYBODY SAYS.  THAT'S

13   12 YEARS.  IT'S OVER A DECADE.

14       I THINK IF WE GET TRAPPED INTO SAYING, WELL, IF THEY

15   EARNED THEIR SENTENCE THIS WAY, MR. DRAWDY HAS TO GET MORE,

16   THEN WE HAVE TO GO THROUGH EXACTLY WHY THEY GOT THEIR

17   SENTENCE THAT WAY.  WE HAVE TO LOOK -- I'M NOT ABLE TO GET

18   PSR'S.  I HAVE DONE IT IN A TRIAL ONCE OR TWICE, BUT IN

19   GENERAL I DON'T GET TO LOOK AT SOMEBODY'S PSR.  I DON'T GET

20   TO LOOK AT HOW THEIR GUIDELINES CAME OUT.  I DON'T GET TO

21   LISTEN TO A TRANSCRIPT OF HOW THEIR LAWYER ARGUED.

22       THAT'S THE NEIGHBORHOOD; 10 TO 15 YEARS IS WHERE A DRUG

23   DEALER OF A SERIOUS NATURE SHOULD END UP.  AS WE GO BEYOND

24   THAT, I THINK WE RUN THE RISK OF EXACTLY WHAT -- DON'T MIND

25   TELLING YOU, I PUT IN MY SENTENCING MEMO, I PUT IT IN EVERY

1   SINGLE SENTENCING MEMO I HAVE DONE FOR OVER FIVE YEARS --

2   ABOUT THE QUOTE FROM THE SUPREME COURT THAT SAYS IF WE WANT

3   TO PROMOTE RESPECT FOR THE LAW, SOMETIMES HAMMERING PEOPLE ON

4   THESE HUGE SENTENCES DOES EXACTLY THE OPPOSITE BECAUSE WHAT

5   IT DOES IS GIVE PEOPLE THE IDEA THAT THIS IS SIMPLY A FACTORY

6   WHERE HARSH SENTENCES ARE HANDED OUT AND THERE'S NO REAL

7   MERCY EVER.

8        AND THAT'S WHAT I'M GOING TO ASK YOU TO DO, YOUR HONOR.

9   I WANT YOU TO HAVE SOME MERCY ON MR. DRAWDY.  HE'S MADE A LOT

10  OF MISTAKES.  HE'S BEING PUNISHED FOR THEM.  HE GOT HIS

11  ENHANCEMENT FOR HAVING A GUN.  HE GOT HIS ENHANCEMENT FOR

12  HAVING HIS SON AROUND WHEN ALL THIS WENT DOWN.  HE GOT AN

13  ENHANCEMENT FOR BEING IN A POSITION OF LEADERSHIP.

14       BUT IF YOU WERE TO LOOK, FOR EXAMPLE, IF HIS SENTENCE

15  WAS COCAINE INSTEAD OF METHAMPHETAMINE, BY MY CALCULATIONS WE

16  WOULD BE STARTING SOMEWHERE IN THE NEIGHBORHOOD OF 20 YEARS.

17  AND I PUT THIS IN THE MEMO PRETTY EXTENSIVELY, SO I WON'T

18  RE-ARGUE IT.  I DON'T SEE ANY REAL DIFFERENCE OTHER THAN

19  POPULARITY, AND THAT ISN'T ME.  I KNOW SOME OF THE STUFF I

20  SAID HERE TODAY IS SIMPLY AN APPEAL BASED ON HOW I FEEL, BUT

21  THAT ISN'T.  THAT IS HARD EVIDENCE FROM THE COMMISSION THAT

22  SAYS THE POPULARITY OF DRUGS HAVE CHANGED.  AND BASED ON

23  THAT, CONGRESS STARTS TO MOVE UP THINGS LIKE THEY ALWAYS

24  HAVE.

25       SO I'M GOING TO ASK YOU FOR A MUCH, MUCH LOWER SENTENCE

1  THAN THE GOVERNMENT HAS ASKED YOU FOR.  A GUIDELINE SENTENCE

2  IS NOT APPROPRIATE.  I DON'T THINK IT WOULD EVER BE

3  APPROPRIATE IN A DRUG CASE.  I DON'T THINK THERE IS ANY

4  SITUATION WITH DRUGS WHERE WE SHOULD BE THAT HIGH UP THE

5  CHAIN.

6      AND I HAVE BEEN IN FRONT OF YOUR HONOR ON CASES WHERE

7  THERE ARE DRUGS THAT ARE -- PEOPLE ARE MISLED AND THEY DIE,

8  PEOPLE, YOU KNOW, TERRIBLE CONSEQUENCES.  IN THIS CASE

9  THERE'S A METHAMPHETAMINE ADDICTION PROBLEM.  BUT 30 YEARS

10  FOR THE SUPPLY SIDE WILL DO ZERO TO THE DEMAND SIDE AND IT

11  DOESN'T MAKE ANY SENSE.

12      *THE COURT:*  LET ME ASK YOU THIS.  I MEAN, YOU

13  MENTIONING THAT HE GOT AN ENHANCEMENT FOR THE INVOLVEMENT OF

14  HIS SON, GUNS, AND THEN THE LEADERSHIP ROLE.  BUT HE ALSO HAS

15  A VERY SIGNIFICANT DRUG WEIGHT WHICH DOESN'T -- THE DRUG

16  WEIGHT ALONE SOUNDS LIKE WHERE YOUR NUMBERS COULD BE BECAUSE

17  IT'S A SUBSTANTIAL AMOUNT OF DRUGS, THEN YOU GET TO

18  LEADERSHIP, INVOLVEMENT OF SON, AND GUNS.

19      SO YOUR NUMBER SOUNDS -- EVEN THOUGH YOU'RE COMING DOWN,

20  IT DOESN'T SEEM TO TAKE INTO ACCOUNT OF ALL THESE THREE

21  ENHANCEMENTS.

22      *MR. KENDRICK:*  MY MAIN COMPLAINT IS WITH THE DRUG

23  WEIGHT.

24      *THE COURT:*  RIGHT.  SO IF YOU DIDN'T HAVE THOSE,

25  WHERE WOULD YOU BE?  IF YOU DIDN'T HAVE THOSE THREE

1    ENHANCEMENTS.

2              *MR. KENDRICK:*  WELL, IF I DIDN'T HAVE THOSE THREE

3    ENHANCEMENTS, WE WOULD BE AT A 35.

4              *THE COURT:*  OKAY.  BUT I'M TALKING ABOUT IN TERMS

5    OF WHAT YOU'D BE ASKING FOR.

6              *MR. KENDRICK:*  I MEAN, I'D BE ASKING FOR 120

7    MONTHS.

8              *THE COURT:*  OKAY.  BUT THEN NOW WE HAVE GOT THE

9    THREE ENHANCEMENTS AND THEN YOU'RE STILL SAYING COME UNDER

10   THE 151.

11             *MR. KENDRICK:*  I AM.  AND I'M NOT DOING MATH IN MY

12   HEAD AS FAST AS I SHOULD BE, YOUR HONOR.

13             *THE COURT:*  YES.  NO, BUT I'M JUST SAYING THE

14   ENHANCEMENTS ARE SIGNIFICANT IN THAT YOU'RE INVOLVING AN

15   UNDER-AGE CHILD, YOU'VE GOT GUNS, ONE OF WHICH WAS IN THE

16   CHILD'S BEDROOM, AND THEN YOU'VE GOT A LEADERSHIP ROLE THAT

17   YOU -- YOU HAVE GOT MORE DRUGS THAN EVERYBODY, LIKE YOU

18   ARE -- YOU ARE THE TOP.

19             *MR. KENDRICK:*  WELL, YOUR HONOR, I THINK PART OF

20   THE PROBLEM WITH THAT DRUG WEIGHT ISSUE IS THAT WHEN WE LOOK

21   AT THIS CASE IN REALITY, YOU HAVE GOT DIFFERENT PEOPLE DOING

22   DIFFERENT THINGS.  YOU HAVE GOT DIFFERENT PEOPLE MOVING

23   METHAMPHETAMINE AND I ALSO THINK YOU HAVE GOT THE PERSON WHO

24   IS A SUPPLIER ONE DAY BEING THE PERSON WHO IS A CUSTOMER THE

25   NEXT DAY BECAUSE THEY CALL THE PERSON THEY JUST SOLD METH TO

1    AND SAID, HEY, I NEED SOME METH, DO YOU HAVE IT, I DON'T HAVE

2    IT, AND THAT'S NORMAL.

3        AND EVERY CASE, ONCE YOU LEAVE THE CONFINES OF BASICALLY

4    ATLANTA, GEORGIA YOU END UP WITH OCCASIONALLY A HIGH-LEVEL

5    DEALER, BUT IN REALITY WHAT YOU END UP WITH ARE A BUNCH OF

6    PEOPLE -- AND MR. DRAWDY IS NOT A DRUG ADDICT.  HE WAS

7    CERTAINLY A DRUG USER AND I THINK HE'S PROBABLY AN ALCOHOLIC.

8        BUT IN REALITY I THINK IT WOULD BE HARD TO ARGUE THAT HE

9    WAS ONE OF THESE PEOPLE WHO JUST HAS THEIR WHOLE LIFE EATEN

10   UP BY METH.  I MEAN, IT'S HAPPENING IN A DIFFERENT WAY.  BUT

11   I DON'T HAVE ANY QUESTION HE'S AN ALCOHOLIC.  I THINK HE'S

12   PROBABLY HAD A PRETTY -- A PRETTY RAGING COCAINE ADDICTION,

13   BUT I DON'T THINK HE'S A METH -- METH ADDICT.  HE WAS

14   PROBABLY ON HIS WAY TO BEING ONE.

15       I THINK -- I MEAN, I THINK THAT DRUG WEIGHT IS WHAT HAS

16   TO BE DISCOUNTED HERE.  AND I WILL ADDRESS THE OTHER

17   OBJECTIONS.  MR. DRAWDY AND I -- YOU REMEMBER WE CAME IN HERE

18   LAST FALL BECAUSE HE WANTED TO GET RID OF ME AND THEN WE MADE

19   UP SORT OF OUR -- WE GOT TOGETHER AND DECIDED THAT WASN'T

20   GOOD FOR US.  BUT WE WENT BACK AND FORTH ABOUT THESE

21   OBJECTIONS HONESTLY UP UNTIL RECENTLY ABOUT WHETHER WE WERE

22   GOING TO OBJECT TO THAT STUFF.  AND WHAT I THINK HE

23   ULTIMATELY CAME TO REALIZE IS THAT HIS SON WAS THERE WHEN

24   THAT CONTROLLED BUY WENT DOWN.  HE DID HAVE GUNS, AND THERE'S

25   NO QUESTION.  HE TURNED THE GUNS OVER TO THE ATF.  IT TOOK A

1    LONG TIME TO DO IT AND HE DIDN'T DO IT IN A SMOOTH WAY, BUT

2    HE DID HAVE GUNS.

3        I DON'T ARGUE THE LEADERSHIP ROLE TYPICALLY AND I HAVE

4    EXPLAINED TO HIM BECAUSE I HAVE BEEN DOWN THAT ROAD HERE,

5    THERE, AND IN RICHMOND, AND IT'S SO FACTUAL-BASED THAT IT'S

6    PROBABLY PRETTY RARE.  BUT I THINK LEADERSHIP IN THESE CASES

7    IS -- IT IMPLIES SOMETHING THAT'S PROBABLY NOT THERE, WHICH

8    IS A FORMAL ORGANIZATION.

9        SO YOUR HONOR, IF YOU WERE TO HOLD ME TO WHAT I SAID,

10   THE SAME WEIGHT ON COCAINE WOULD BE A LEVEL 34, HE GETS SIX

11   POINTS, 40 BACK TO A 37, THAT WOULD BE 262 TO 327.  YOU

12   AREN'T HARDLY EVER GOING TO GET ME TO CONCEDE THAT EVEN A

13   SENTENCE THAT HIGH IS APPROPRIATE FOR DRUGS UNLESS THAT THERE

14   ARE RARE CASES WHERE SOMEONE DIES, AND IN THOSE CASES OR IN A

15   CASE WHERE THE SUPPLY SIDE IS SO BIG THAT IT'S UNFATHOMABLE,

16   I MIGHT MAKE LESS OF AN ARGUMENT OR LESS OF AN INFLAMED,

17   PASSIONATE ARGUMENT.

18       BUT EVEN IF IT WAS COCAINE AND IT WAS A 20-YEAR

19   SENTENCE, THAT'S A LOT OF TIME.  I MEAN, THAT'S AN INCREDIBLE

20   AMOUNT OF TIME.  AND THE QUESTION IS, WHAT IS -- WHAT'S THE

21   OUTCOME?  WHEN WE ARE DONE WITH ALL THIS, IF WE HAVE JUST

22   MOVED HIM ALONG THE LINE AND CLOSED THE CASE, THERE IS --

23   THERE'S SOME SATISFACTION TO THAT.

24       BUT IF WE ARE TRYING TO TURN THIS INTO SOMETHING

25   VALUABLE, THEN, YOUR HONOR, WHAT I WROTE IN THE FIRST PAGE OF

1    THE SENTENCING MEMORANDUM, IF YOU EVER GET TIRED OF READING

2    WHAT I WRITE, THAT'S REALLY WHERE IT ALL LIVES.  I CAN TALK

3    ABOUT EMPIRICAL DATA.  I CAN TALK ABOUT GUIDELINES.  I CAN

4    TALK ABOUT VERTICAL AND HORIZONTAL CORPORATE INTEGRATION IN A

5    CONSPIRACY.

6         BUT WHAT IT COMES DOWN TO IS THAT MR. DRAWDY'S EARLIEST

7    MEMORY WAS RIDING AROUND A BIG WHEEL WHEN HE WAS THREE YEARS

8    OLD AT AN ORPHANAGE NOT BECAUSE HIS PARENTS WERE DEAD BUT

9    BECAUSE THEY TURNED HIM OVER TO THAT; HIS WHOLE FAMILY.  NOW,

10   WHETHER THAT MATTERS OR NOT I GUESS DEPENDS ON HOW YOU VIEW

11   THINGS LIKE OPPORTUNITY.

12        THERE ARE PEOPLE THAT HAVE PROBABLY HAD AS HARD A

13   CHILDHOOD WHO HAVE ASCENDED TO THE HIGHEST RANKS OF OUR

14   COUNTRY.  BUT I WOULD ARGUE THERE ARE PROBABLY A LOT MORE WHO

15   HAVE ENDED UP WHERE MR. DRAWDY ENDS UP.  AND THERE'S A LEVEL

16   OF SYMPATHY THAT WE CAN EXTEND TO HIM OR WE CANNOT.  BUT AS

17   WE SENTENCE PEOPLE LIKE HIM TO 30 YEARS, THERE WILL COME A

18   TIME WHERE THE SYMPATHY DOESN'T EXIST ANY MORE, WE HAVE GIVEN

19   IT AWAY, AND THAT IS NOT -- DOESN'T MAKE SENSE.

20        SO, I WILL STAND BY ASKING -- I MEAN, IF YOU PRESS ME

21   AND I START TO FEEL LIKE MY -- I'M ASKING FOR TOO MUCH, A

22   JUDGE TOLD ME RECENTLY THAT PIGS GET FAT AND HOGS GET

23   SLAUGHTERED.  I DON'T WANT TO GET SLAUGHTERED.  YOU KNOW, 180

24   MONTHS WOULD BE HIGHER THAN MS. HARTLEY.

25        AGAIN, MR. SMITH -- I'M GOING TO HAVE A HARD TIME

1    ARGUING, YOU KNOW, CONCEDING THAT MR. SMITH WAS SO FAR BELOW

2    MR. DRAWDY THAT THEY WEREN'T BOTH ACCOMPLISHING THE EXACT

3    SAME THING IN THEIR COMMERCIAL DRUG-DEALING LIFE.  SO, I

4    DON'T KNOW ANYTHING ABOUT HIS CRIMINAL RECORD.

5        I KNOW MY CLIENT'S CRIMINAL RECORD ESSENTIALLY CONSISTS

6    OF AN OLD MARIJUANA CONVICTION, WHICH IT'S ILLEGAL OR IT'S

7    LEGAL NOW IN HALF THE STATES, SO IT'S HARD FOR ME TO BELIEVE

8    THAT A MARIJUANA CONVICTION SHOULD REFLECT BADLY ON HIM.  AND

9    THEN HE GETS IN TROUBLE FAIRLY RECENTLY AND THAT'S WHERE HIS

10   FIVE POINTS COME FROM.  HE -- YOU KNOW, HE -- I THINK HE WAS

11   ON PROBATION FOR SOMETHING WHEN ALL THIS KIND OF DEVELOPED,

12   BUT THAT'S WHEN HIS SLIDE HAPPENED.

13       I MEAN, HIS CRIMINAL HISTORY GOES BACK TO WHEN HE WAS

14   ABOUT 19, BUT IT'S SORT OF PIDDLY STUFF FROM A GUY WHO IS,

15   YOU KNOW, MAYBE JUST NOT NECESSARILY DOING WHAT HE IS

16   SUPPOSED TO BE DOING, BUT THERE'S NO DANGER TO ANYBODY.  IT'S

17   ONLY RECENTLY WHEN IT GETS SERIOUS.

18       AND I MEAN, YOUR HONOR, THINK ABOUT WHAT I AM SITTING

19   HERE DOING.  I AM BEGGING YOU TO GIVE SOMEBODY A DECADE AND A

20   HALF OR SO IN FEDERAL PRISON.  IT IS A SYSTEM THAT DOESN'T

21   MAKE A LOT OF SENSE.  AND I THINK IF I ARGUE THAT IT DIDN'T

22   MAKE A LOT OF SENSE IN GENERAL, YOU COULD DISREGARD IT.  BUT

23   WE SPECIFICALLY TOLD YOU WHY THE METHAMPHETAMINE GUIDELINES

24   DON'T MAKE MUCH SENSE.

25       AND ONCE THEY DON'T, I MEAN, DO YOU REALLY HAVE TO TAKE

1    THEM INTO ACCOUNT AT ALL?  I MEAN, ONCE YOU KNOW THAT EVEN

2    THE SENTENCING COMMISSION ITSELF WOULD PROBABLY SAY THESE ARE

3    NOT HOW WE NORMALLY CRAFT OUR SENTENCES, I MEAN, DO WE REALLY

4    NEED TO -- I MEAN, THERE'S NO WAY TO CALIBRATE THEM BACK.

5         YOU KNOW, EVEN COMPARING THEM TO COCAINE IS A ARGUABLY

6    VERY DIFFERENT SITUATION BECAUSE YOUR HONOR HAS TO KNOW THAT

7    50 KILOGRAMS OF COCAINE AND 50 KILOGRAMS OF METH INVOLVE TWO

8    VERY DIFFERENT PEOPLE.  SOMEONE WITH THAT AMOUNT OF COCAINE

9    HAS ASCENDED VERY HIGH IN THE DRUG WORLD WHERE SOMEBODY WITH

10   THAT AMOUNT OF METH HAS, YOU KNOW, OFTEN JUST BEEN WHERE THEY

11   NEED TO BE WHEN THEY NEED TO BE, AND THAT'S UNFORTUNATE.

12        SO I DON'T -- I DON'T IN ANY WAY THINK I HAVE ASKED YOU

13   FOR A RIDICULOUS SENTENCE EVEN THOUGH I GET IT; IT'S LOW.

14   IT'S LOWER THAN WHAT WE SEE AND WHAT WE EXPECT, BUT IS THAT

15   BECAUSE -- BECAUSE I AM SORT OF OFF BASE OR IS IT BECAUSE OUR

16   SYSTEM IS?  AND I WOULD CERTAINLY ARGUE THAT IT IS NOT ME.

17        BEFORE YOUR HONOR MOVES ON, I DO HAVE -- THERE WAS A

18   LETTER FROM MR. DRAWDY'S SON.  SO I UNDERSTAND THE

19   GOVERNMENT'S POINT.  IT'S THE SAME POINT I WOULD MAKE.  IT'S

20   PROBABLY A CONVERSATION THAT MR. DRAWDY AND I HAVE HAD ABOUT

21   HIS SON BEING PRESENT DURING THIS CONDUCT.  BUT AGAIN, HE'S

22   PLED TO THAT AND HE'S THE -- HE'S HERE ASKING YOU NOT TO PUT

23   HIM IN PRISON FOR THE REST OF HIS LIFE.

24        SO HE'S DEFINITELY TAKING A BEATING FOR THAT BEHAVIOR,

25   BUT THE REST OF THAT LETTER SAYS SOMETHING DIFFERENT.  IT

1    TELLS YOU WHAT MR. DRAWDY WAS TRYING TO DO BEFORE ALL OF THIS

2    HAPPENED AND MAYBE SUCCESSFULLY.  SO HIS SON IS GOING TO ALSO

3    GROW UP ESSENTIALLY WITHOUT A FATHER, BUT HE'S GOTTEN A LOT

4    OF TIME IN.  HE'S GOTTEN PRETTY FAR ALONG.  AND THAT IS NOT

5    A -- THAT LETTER WAS GIVEN TO ME THIS MORNING.

6        AND I KNOW ZANE, SO I DON'T THINK ZANE HAD THAT LETTER

7    BEFORE THE LAST 24 HOURS SO THAT WE COULD TURN IT OVER

8    EARLIER, SO THAT'S HOW HE FEELS NOW.  THAT'S AFTER THE

9    CONDUCT YOU HAVE HEARD ABOUT THAT THE GOVERNMENT ARGUED

10    CORRECTLY AND CERTAINLY HAS THE RIGHT TO ARGUE, MAKE THIS

11    MORE SERIOUS, BUT THAT'S THE KID WHO CAME OUT OF MR. DRAWDY.

12    THAT'S THE KID WHO CAME OUT OF MR. DRAWDY TRYING TO RAISE HIM

13    RIGHT.  SEEMS LIKE IT'S WORKING.

14        THERE IS ONE OTHER PERSON WHO WOULD LIKE TO ADDRESS YOU.

15            THE COURT:  SURE.

16            MR. KENDRICK:  I UNDERSTAND THERE'S A -- IF I'M

17    CORRECT -- AUNT OF MR. DRAWDY?  FAMILY FRIEND.  CHILDHOOD

18    FRIEND.  THEY HAVE BEEN VERY CLOSE.

19            THE COURT:  OKAY.  COME FORWARD, PLEASE.

20            MR. KENDRICK:  I DON'T KNOW IF YOU WANT HER TO COME

21    TO THE PODIUM, YOUR HONOR.

22            THE COURT:  YES, PLEASE.  PLEASE STATE YOUR NAME,

23    PLEASE.

24            MS. BOONE:  APRIL BOONE.

25            THE COURT:  THANK YOU.  GO FORWARD.

1          MS. BOONE:  OKAY.  I JUST WANTED TO SAY THAT I HAVE

2    KNOWN MR. DRAWDY SINCE WE WERE ABOUT NINE YEARS OLD.  HE DID

3    HAVE A TOUGH LIFE GROWING UP.  THE PERSON THAT YOU SEE HERE

4    TODAY AND THE BEHAVIOR THAT'S PRESENTED BEFORE YOU IS NOT THE

5    PHILLIP THAT I HAVE ALWAYS KNOWN.

6          I'M PRETTY MUCH JUST ASKING FOR LENIENCY WHEN IT COMES

7    TO SENTENCING IN CONSIDERATION OF HIS THREE CHILDREN AS THEIR

8    MOM PASSED AWAY TRAGICALLY THREE YEARS AGO.  I FEEL THAT

9    MR. DRAWDY LOST HIMSELF SOMEWHERE AFTER THAT AS WELL AS

10   MYSELF.  I HAVE MADE MISTAKES THAT I WOULD HAVE NEVER MADE

11   BEFORE, NOT ILLEGAL MISTAKES, BUT IT DID CHANGE ME MENTALLY,

12   AND I FEEL THAT THAT PLAYS A ROLE IN MR. DRAWDY'S CASE.

13         AND AS FAR AS -- IF I CAN REFLECT ON WHAT SHE WAS SAYING

14   AS FAR AS HIM HAVING HIS SON INVOLVED.  DEFINITELY THAT WAS

15   LACK OF JUDGMENT, BUT THERE AGAIN, THE LACK OF JUDGMENT WAS

16   COMING FROM A LOT OF DIFFERENT AREAS, HIS HISTORY OF

17   CHILDHOOD, HIS, YOU KNOW, LOSS OF HIS WIFE TRAGICALLY PASSING

18   AWAY.

19         AND HIS SON ZANE ACTUALLY RESIDES WITH ME NOW AND HE IS

20   ACTUALLY A REALLY GOOD KID; GOES TO SCHOOL, HE DOES

21   EVERYTHING HE IS SUPPOSED TO.  SO PHILLIP DID SET A GOOD

22   BASELINE FOR HIM EVEN THOUGH HE WAS TANGLED UP IN THAT LITTLE

23   BIT OF WRONGDOING OF MR. DRAWDY AT THAT TIME.

24         AND THEN HIS YOUNGEST SON IS ONLY 10 AND HE'LL NEVER GET

25   TO KNOW HIS FATHER IF HE GETS TOO MUCH TIME.  I MEAN, I KNOW

1    THAT WHAT HE'S DONE IS HORRIBLE, BUT HE IS 40 AND HIS

2    YOUNGEST SON IS 10.  I JUST -- PLEASE CONSIDER THAT WHEN YOU

3    MAKE YOUR DECISION ON THE TIME YOU GIVE HIM.

4            *THE COURT:*  THANK YOU.

5            *MS. BOONE:*  THANK YOU.

6            *THE COURT:*  ANYTHING FURTHER?

7            *MR. KENDRICK:*  NO, YOUR HONOR.

8            *THE COURT:*  OKAY.  GOVERNMENT RESPOND?

9            *MS. RICHARDSON:*  YOUR HONOR, I'LL START BY SAYING

10   MR. KENDRICK I BELIEVE IS A GREAT, ZEALOUS ADVOCATE AND I

11   FOUND MYSELF ALMOST INTERNALLY NODDING ALONG AS HE WAS

12   TALKING.  BUT YOUR HONOR, HE SAID SOMETHING INTERESTING AND I

13   WROTE IT DOWN BECAUSE I WANTED TO GET IT RIGHT.  HE SAID, DO

14   WE REALLY HAVE TO TAKE THE GUIDELINES INTO ACCOUNT AFTER ALL?

15       AND YOUR HONOR, IT IS THIS EXACT SCENARIO WHY CONGRESS

16   WROTE THE LAWS IT DID, WHY IT ASKED US TO CONSIDER THE

17   3553(A) FACTORS BECAUSE IT CAN'T BE THAT BECAUSE WE HAVE A

18   GREAT ADVOCATE, BECAUSE WE HAVE A SPECIFIC SITUATION WHERE WE

19   BELIEVE SOMEONE THAT -- THAT WE BELIEVE THAT THE GUIDELINES

20   ARE TOO DRACONIAN.  IT CAN'T BE THAT IN ONE SINGLE COURTROOM

21   WE COMPLETELY DISREGARD THE GUIDELINES; RIGHT?  WHERE IN

22   EVERY OTHER COURTROOM IN AMERICA WE ARE TRYING TO HAVE SOME

23   UNIFORMITY IN SENTENCING.  THAT IS THE ENTIRE PURPOSE OF THE

24   GUIDELINES.

25       AND YOUR HONOR, I WENT ON AND ON ABOUT HIS SPECIFIC

1    CO-DEFENDANTS TO TRY TO GIVE SOME MORE SPECIFICITY TO THIS

2    CASE, YOUR HONOR.  3553(A) ASKED US TO CONSIDER THE NEED TO

3    AVOID UNWARRANTED SENTENCING DISPARITIES.  YOUR HONOR, I

4    BELIEVE THAT APPLIES BETWEEN MR. DRAWDY AND HIS

5    CO-DEFENDANTS, BUT I BELIEVE IT APPLIES TO MR. DRAWDY AND

6    EVERY OTHER DEFENDANT IN THE FEDERAL SYSTEM TODAY.

7         AND AS A REPRESENTATIVE OF THE UNITED STATES GOVERNMENT,

8    WHAT I ADVOCATE HERE TODAY IS THAT THERE BE A -- THAT WE

9    AVOID ANY UNWARRANTED SENTENCING DISPARITY.  YOUR HONOR, I

10   BELIEVE THE GUIDELINES HAVE BEEN APPROPRIATELY CALCULATED

11   BASED ON THE WEIGHT THAT MR. DRAWDY CONCEDES IS APPLICABLE TO

12   HIMSELF.  BASED ON THAT WEIGHT, THAT'S WHAT'S DRIVING HIS

13   GUIDELINES, AND I CANNOT AND WILL NOT ADVOCATE THAT --

14   ADVOCATE FOR A DEPARTURE IN THIS CASE BASED ON THE ARGUMENTS

15   MADE BY MR. KENDRICK.

16        YOUR HONOR, I -- AS A PROSECUTOR -- AS A PROSECUTOR I AM

17   LOOKING AT THESE 3553(A) FACTORS, I'M LOOKING AT MANY PSR'S,

18   AND BASED ON THE -- BASED ON THE GREAT NUMBER OF DEFENDANTS

19   THAT THE FEDERAL COURT SYSTEM -- BASED ON THE GREAT NUMBER OF

20   DEFENDANTS IN THE FEDERAL COURT SYSTEM AND THOSE 3553(A)

21   FACTORS, YOUR HONOR, I BELIEVE IT IS MY DUTY TO REQUEST AND

22   ASK FOR A SENTENCE WITHIN THOSE GUIDELINES, AND I WOULD ASK

23   YOU TO DENY ANY MOTION FOR A DOWNWARD DEPARTURE OR A VARIANCE

24   IN MR. DRAWDY'S CASE.

25        YOUR HONOR, ONE LAST THING I WILL SAY, AND MR. KENDRICK

1    TALKED ABOUT THIS CONSPIRACY NOT BEING VERTICAL.  YOUR HONOR,

2    IN SOME CASES THAT IS TRUE.  BUT FROM EVERY CO-CONSPIRATOR,

3    EVERY CO-DEFENDANT WE TALKED TO, IF WE WERE TO DRAW ANY SORT

4    OF DIAGRAM, IT WOULD BE A CIRCLE AND MR. DRAWDY WOULD BE IN

5    THE DEAD CENTER OF IT.  MR. DRAWDY IS A LEADER HERE.

6         MR. DRAWDY IS CONNECTED TO SO MANY OTHER CO-DEFENDANTS,

7    SO MANY OTHER CO-CONSPIRATORS WHO WERE DISTRIBUTING

8    NARCOTICS, COCAINE, EVERYTHING THROUGHOUT THE STATE OF SOUTH

9    CAROLINA INTO GEORGIA AND INTO ATLANTA, YOUR HONOR.  AND

10   BASED ON ALL OF THAT INFORMATION I AM ASKING YOU FOR A

11   GUIDELINE SENTENCE HERE.

12        *THE COURT:*  THANK YOU.

13        *MS. BOONE:*  MAY I SAY SOMETHING?

14        *THE COURT:*  YOU CAN SPEAK TO MR. KENDRICK ABOUT

15   WHAT YOU WANTED TO SAY AND THEN LET HIM MAKE A JUDGMENT CALL

16   ON THAT.

17       (MR. KENDRICK CONFERRING WITH MS. BOONE.)

18        *MR. KENDRICK:*  WE ARE FINE, YOUR HONOR.  I THINK

19   IT'S SOMETHING THAT'S BEEN COVERED.

20        *THE COURT:*  OKAY.  THANK YOU.  OKAY.  MR. DRAWDY,

21   I'M HAPPY TO HEAR FROM YOU.

22        *THE DEFENDANT:*  I JUST WANT TO APOLOGIZE TO

23   EVERYBODY, ESPECIALLY THE COURTS AND MY FAMILY.  YOUR HONOR,

24   I DID HAVE A ROUGH CHILDHOOD.  IT'S NOT AN EXCUSE.  I DID

25   LOSE MY WIFE.  IT'S NOT ANY EXCUSE.  I JUST DIDN'T WANT HIM

1    TO GROW UP THE WAY I DID, YOU KNOW.  DIDN'T WANT THEM TO HURT

2    AND TO -- TO WANT FOR THINGS, AND I DONE IT THE WRONG WAY.

3              THE COURT:  THANK YOU.  ANYTHING FROM ANYONE ELSE?

4              MS. RICHARDSON:  NO, YOUR HONOR.

5              THE COURT:  OKAY.

6              MR. KENDRICK:  NO, YOUR HONOR.

7              THE COURT:  I'LL MAKE A COUPLE OF STATEMENTS, THEN

8    I WILL HAVE MR. DRAWDY STAND FOR SENTENCING.  MR. DRAWDY, I

9    DO ADOPT THE SENTENCING FACTORS AS INDICATED BY THE

10   GOVERNMENT, AND THEN I'LL HAVE A FEW STATEMENTS MYSELF IN

11   THAT REGARD.

12        YOU ARE BEFORE THE COURT BECAUSE YOU PLED GUILTY TO

13   CONSPIRACY TO POSSESS WITH INTENT TO DISTRIBUTE AND TO

14   DISTRIBUTE 50 GRAMS OR MORE OF METHAMPHETAMINE AND 500 GRAMS

15   OR MORE OF A MIXTURE OR SUBSTANCE CONTAINING METHAMPHETAMINE.

16   THIS WAS A LARGE DRUG-TRAFFICKING CONSPIRACY.  IT ACQUIRED

17   AND YOU DISTRIBUTED MULTI-OUNCE TO MULTI-KILOGRAM QUANTITIES

18   OF METHAMPHETAMINE THROUGHOUT THE MIDLANDS AREA OF SOUTH

19   CAROLINA.

20        THROUGH THE INVESTIGATION YOU ARE IDENTIFIED AS A

21   SIGNIFICANT SOURCE OF METHAMPHETAMINE WHO SUPPLIED QUANTITIES

22   OF METHAMPHETAMINE TO OTHER DRUG TRAFFICKERS OPERATING IN THE

23   RICHLAND COUNTY AREA OF SOUTH CAROLINA.  YOU POSSESSED OR

24   PURCHASED AT LEAST 50 KILOGRAMS OF METHAMPHETAMINE WHICH YOU

25   DISTRIBUTED TO OTHER DRUG TRAFFICKERS IN THE RICHLAND COUNTY

1    AREA OF SOUTH CAROLINA.

2         YOUR CRIMINAL HISTORY IS PRETTY MODERATE.  IT INCLUDES

3    FELONY CONVICTIONS FOR BREAKING INTO AUTO OR TANKS, UNLAWFUL

4    ENTRY INTO ENCLOSED PLACES, POSSESSION WITH INTENT TO

5    DISTRIBUTE MARIJUANA, AND DOMESTIC VIOLENCE SECOND DEGREE.

6    YOU ALSO HAVE MISDEMEANOR CONVICTIONS FOR DISORDERLY CONDUCT,

7    SIMPLE ASSAULT AND BATTERY, LOITERING, THREE COUNTS OF

8    DRIVING UNDER SUSPENSION, TWO COUNTS OF OPEN CONTAINER OF

9    BEER OR WINE, GIVING FALSE INFORMATION, FAILING TO STOP FOR A

10   BLUE LIGHT, AND PETTY OR SIMPLE LARCENY.

11        AS A RESULT OF YOUR PRIOR CONVICTION FOR A FELONY DRUG

12   OFFENSE THE ATTORNEY FOR THE GOVERNMENT FILED AN INFORMATION

13   PURSUANT TO 21 USC SECTION 851 WHICH ENHANCED YOUR EXPOSURE,

14   STATUTORY EXPOSURE TO A MANDATORY MINIMUM OF 20 YEARS

15   IMPRISONMENT.  THEN THE FIRST STEP ACT CAME IN AND SO THEN

16   YOUR NEW STATUTORY PROVISION ENDS UP BEING A MANDATORY

17   MINIMUM OF 10 YEARS UP TO LIFE IMPRISONMENT.

18        YOU'RE 39 YEARS OLD, WIDOWED WITH THREE CHILDREN.  PRIOR

19   TO YOUR ARREST YOU RESIDED IN GASTON, SOUTH CAROLINA WITH

20   YOUR FIANCEE AND A 15-YEAR-OLD SON AND YOU REPORTED BEING IN

21   GOOD PHYSICAL AND MENTAL HEALTH.  YOU HAVE EXPERIMENTED WITH

22   DRUGS INCLUDING MARIJUANA, ALCOHOL, COCAINE, AND

23   METHAMPHETAMINE IN THE PAST.  YOU HAVE COMPLETED AN

24   OUT-PATIENT SUBSTANCE ABUSE TREATMENT PROGRAM.

25        EVEN THOUGH OBVIOUSLY UNDER SCENARIO HERE YOU WOULDN'T

1    HAVE QUALIFIED FOR DRUG COURT, I DO BELIEVE THAT IF

2    APPLICABLE AND THERE ARE ANY REHABILITATIVE EFFORTS, THAT I

3    WILL ALWAYS RECOMMEND INTENSIVE DRUG TREATMENT COUNSELING

4    BECAUSE IT GOES BEYOND JUST THE ADDICTION OR THE PURPOSE --

5    PERSON BUT HOW YOU ARE AFFECTING OTHER PEOPLE WHO ALSO GET

6    ADDICTED BY THE SUBSTANCE BASED ON YOUR PARTICULAR CRIMINAL

7    ACTIVITIES.

8        YOU HAVE COMPLETED EIGHTH GRADE AT PELION HIGH SCHOOL,

9    AND SO AS PART OF YOUR REHABILITATIVE EFFORTS JUST AS WELL

10    I'M GOING TO RECOMMEND THAT YOU BE IN ANY KIND OF GED PROGRAM

11    OR WORK-RELATED PROGRAMS AS WELL.  PRIOR TO YOUR ARREST YOU

12    HAD BEEN SELF-EMPLOYED FOR APPROXIMATELY 20 YEARS REMODELING

13    HOUSES AND COMPLETING FLOORING WORK, SO YOU DO HAVE SOME

14    SKILL SET.

15        NOW WITH RESPECT TO THIS PARTICULAR SENTENCE, AS I HAVE

16    INDICATED EARLIER, THE CONCERN IS THE SIGNIFICANT AMOUNT OF

17    DRUGS.  WHEN YOU'RE DEALING WITH THIS SUBSTANTIAL AMOUNT OF

18    KILOGRAMS -- AND GENERALLY SPEAKING, THIS IS WHAT YOU GOT

19    CAUGHT WITH.  THIS IS WHAT THE EVIDENCE CAN ACTUALLY VERIFY.

20    AND MAYBE THERE IS MORE THAN, YOU KNOW, WHAT IS ACTUALLY HERE

21    IN THIS PARTICULAR CASE.  SO EVEN THERE GIVING SOME

22    CONSIDERATION IF YOU DIDN'T HAVE THESE OTHER ENHANCEMENTS,

23    IT'S A SIGNIFICANT AMOUNT OF DRUGS.

24        THE OTHER ISSUES THAT'S CONCERNING IS YOU INVOLVING YOUR

25    CHILD.  I UNDERSTAND THAT YOU HAD A POOR CHILDHOOD, YOU HAD A

1    LOT OF ISSUES THAT GO ON, AND WHICH IS REFLECTED IN THE

2    SENTENCING MEMO THAT WAS DONE AND FILED BY YOUR LAWYER, BUT

3    THEN ALSO THERE'S THE OTHER CONCERN THAT IT'S A CHOICE; THAT

4    IF YOU HAD GROWN UP WITH THAT, THEN YOU DON'T WANT TO EXPOSE

5    YOUR CHILD TO THOSE THINGS AND YOU WANT THEM TO HAVE A BETTER

6    LIFE, BUT SOMEHOW CONSCIOUS DECISIONS AS AN ADULT, YOU

7    BROUGHT YOUR CHILD IN IN BOTH THE SIDE OF DRUGS AND GUNS.

8         ANOTHER CONSIDERATION IS JUST HAVING GUNS.  WHEN YOU PUT

9    DRUGS AND GUNS TOGETHER, IT BECOMES A MORE VIOLENT WORLD

10   BECAUSE YOU ARE USING THE GUNS TO PROTECT THE DRUGS.  AND

11   THEN, OF COURSE, THE LEADERSHIP ENHANCEMENT HERE.  IN ALL THE

12   INDICTMENTS THAT HAVE COME OUT OF HERE, THAT THEY ARE STILL

13   PLACING YOU AT THE TOP.

14        NOW WITH RESPECT TO ANOTHER ISSUE, BECAUSE WE HAVE

15   STARTED OUR FEDERAL BRIDGE PROGRAM, WHICH IS ESSENTIALLY DRUG

16   COURT, EVEN YOUR LAWYER ADMITS THAT YOU'RE NOT ADDICTED OR

17   THE TYPICAL USER THAT WITH -- YOU HAVE HAD THAT TYPE OF

18   CHILDHOOD, THAT'S USUALLY WHERE WE FIND PEOPLE FALLING INTO

19   THE PREY THAT WAY; NOT BEING THE LEADER OR ORGANIZER OF A

20   SUBSTANTIAL DRUG ACTIVITY, WHICH TO ME THAT'S MORE OF A

21   CHOICE, AND THAT'S WHY THOSE PEOPLE CAN'T NECESSARILY GET

22   INTO BRIDGE COURT BECAUSE THOSE PEOPLE NEED TO BE OUT ON

23   BOND, NOT DETAINED WHILE WE ARE GOING THROUGH HERE, BUT IF

24   THEY ARE THE HIGH LEADER-UPS, THEN YOU CAN HAVE THAT.

25        AND THEN ONE THING THAT JUST DOES NOT COME OUT AND GET

1    DISCUSSED IN A LOT OF THESE CASES, IN THE END WHAT WE ARE NOT

2    SEEING IS ALL THE FACELESS VICTIMS; ALL THOSE PEOPLE WHO GOT

3    A HOLD OF THOSE DRUGS, THEY ARE PROBABLY AROUND THIS STATE

4    AND OTHER PLACES SITTING IN MAGISTRATE COURTS, STATE COURTS

5    FACING THEIR OWN CHARGES FOR BEING IN POSSESSION OF IT,

6    PERHAPS TRYING TO BREAK OFF A LITTLE PIECE OF THE ACTION, IF

7    YOU WILL, AND BECOMING DRUG DEALERS ON A MUCH SMALLER SCALE

8    AND THINGS OF THAT NATURE.  SO THAT'S THE BIGGER PART TO ME

9    WHEN WE TALK ABOUT THE DETERRENCE.

10       UNFORTUNATELY IN THIS WORLD YOU'LL GET REPLACED, BUT

11   IT'S THE FACT OF YOU STANDING FOR YOUR OWN PUNISHMENT OF ALL

12   THESE FACELESS VICTIMS WHO'VE NOW BECOME ADDICTED, THEY ARE

13   USERS, THEY ARE TRYING TO PUSH DRUGS AND, YOU KNOW, YOU JUST

14   HAVE THAT REPETITIVE CYCLE IN THAT REGARD.

15       ANOTHER ASPECT OF THIS CASE IS THAT WE HAVE THE FIRST

16   STEP ACT.  UNDER YOUR PRIOR GUIDELINE WITH RESPECT TO THE

17   PRIOR PRESENTENCE INVESTIGATION REPORT THAT WAS FILED ON

18   OCTOBER 12TH, 2018 YOU WOULD HAVE FACED, AS I INDICATED,

19   CUSTODY MINIMUM OF 20 YEARS TO LIFE FOLLOWED BY AT LEAST 10

20   YEARS OF SUPERVISED RELEASE.

21       AND HERE YOU GOT -- YOU'RE SUPPOSED TO HAVE, AS THEY

22   THOUGHT THROUGH THE SENTENCING GUIDELINES AND THE STATUTE GET

23   THE BENEFIT OF 10 YEARS TO LIFE AND AT LEAST FOLLOWED BY FIVE

24   YEARS.  SO, BY YOU STILL BEING AT THE OLD GUIDELINE REPORT

25   FILED IN OCTOBER 2018 OF 360 MONTHS UP TO LIFE IMPRISONMENT,

1    YOU'RE STILL AT THE SAME PLACE.  SO SOMETHING DOES SEEM A

2    LITTLE ODD TO ME ABOUT THAT WHEN THERE WAS AN INTENTION TO

3    GIVE YOU SOME KIND OF BENEFIT.

4        THEY DID TAKE YOUR MANDATORY MINIMUM DOWN, BUT BASED ON

5    YOUR OTHER ENHANCEMENTS AND EVERYTHING ELSE HERE, THEN IT

6    JUST PLACED YOU RIGHT BACK TO WHERE YOU WERE, SO YOU REALLY

7    DIDN'T SEE MUCH BENEFIT IN THAT REGARD.

8        AND THEN THERE'S ALSO THE CRACK COCAINE ARGUMENT WHERE

9    THE FAIR SENTENCING ACT, UPON YEARS OF PEOPLE HAVING TO BE

10   SUBJECT TO THAT POLICY STATEMENT WHERE THERE WAS NOT THE

11   EMPIRICAL DATA AND WE FOUND OUT THE SCIENCE SUGGESTS THAT

12   THEY WERE BASICALLY THE SAME DRUG, JUST, YOU KNOW, COOKED UP

13   A DIFFERENT WAY, AND THEN CONGRESS COMES BACK IN AND TRIES TO

14   STRAIGHTEN OUT AS MUCH AS THEY COULD THERE THAT WE'RE

15   PROBABLY NO -- IN THAT SAME SCENARIO WITH METH.

16       I MEAN, AT SOME POINT THEY ARE PROBABLY GOING TO REVISIT

17   THE PARTICULAR SUBSTANCE OF THE DRUG IN TERMS OF THOSE

18   ISSUES.  SO, I'M GOING TO GIVE SOME CONSIDERATION TO YOUR

19   MOTION FOR VARIANCE BASED ON THE FAIR SENTENCING ACT, BASED

20   ON THE FACT -- I MEAN, EXCUSE ME -- THE FIRST STEP ACT THAT

21   YOU DIDN'T GET ANY BENEFIT THERE.

22       BUT I'M ALSO VERY CONCERNED ABOUT ALL THE REASONS THAT

23   I'VE LISTED; SIGNIFICANT DRUG QUANTITY, INVOLVES A CHILD AND

24   GUNS, AND YOU HAVE A SIGNIFICANT LEADERSHIP ENHANCEMENT, AND

25   YOU HAVE MADE THESE VERY CONSCIOUS ADULT DECISIONS TO GO THAT

1    HIGH IN THE TRADE WHEN YOU COULD HAVE NOT EXPOSED YOUR

2    CHILDREN TO THESE ISSUES AND THEN YOU ACTUALLY BROUGHT YOUR

3    CHILD INTO THIS ISSUE, SO PLEASE STAND FOR SENTENCING.

4         SO HAVING CALCULATED AND CONSIDERED THE ADVISORY

5    SENTENCING GUIDELINES AND HAVING ALSO CONSIDERED THE RELEVANT

6    STATUTORY SENTENCING FACTORS CONTAINED IN 18 USC SECTION

7    3553(A) AS WELL AS THE OTHER PART THAT I DID NOT DISCUSS WAS

8    THE SENTENCING DISPARITIES, IT'S THE JUDGMENT OF THE COURT

9    THAT THE DEFENDANT, PHILLIP DRAWDY, IS HEREBY COMMITTED TO

10   THE CUSTODY OF THE BUREAU OF PRISONS FOR A PERIOD OF 22

11   YEARS.  AND IF I DO THE MATH CORRECT, I BELIEVE THAT'S 262

12   MONTHS.

13            *PROBATION AGENT:* EXCUSE ME, YOUR HONOR.

14            *THE COURT:* I'M SORRY, 264 MONTHS.

15            *PROBATION AGENT:* THAT'S CORRECT, 264.

16            *THE COURT:* THANK YOU.  OKAY.  IT APPEARS YOU DON'T

17   HAVE THE ABILITY TO PAY A FINE, THEREFORE YOUR FINE IS WAIVED

18   AND YOU'LL PAY THE MANDATORY $100 SPECIAL ASSESSMENT FEE.  I

19   WILL ALLOW YOU TO BE IN THE INTENSIVE DRUG PROGRAM.  YOU'LL

20   ALSO BE ABLE TO GET YOUR GED.

21        UPON YOUR RELEASE FROM IMPRISONMENT YOU WILL BE PLACED

22   ON SUPERVISED RELEASE FOR A TERM OF FIVE YEARS.  WITHIN 72

23   HOURS AFTER RELEASE FROM THE BUREAU OF PRISONS YOU NEED TO

24   REPORT IN THE DISTRICT OF YOUR PROBATION OFFICE.  WHILE ON

25   SUPERVISED RELEASE YOU HAVE MANDATORY, STANDARD AND SPECIAL

1    CONDITIONS OF SUPERVISION AND THAT WILL INCLUDE YOUR RANDOM

2    DRUG TESTING AND ADDITIONAL DRUG TREATMENT AND COUNSELING AS

3    NEEDED AND DICTATED BY THE PROBATION OFFICE.

4        YOU WILL PAY FOR SUCH SERVICES ON A SLIDING SCALE BASED

5    ON YOUR ABILITY TO PAY.  IF YOU'RE NOT ABLE TO SECURE STABLE

6    AND VERIFIABLE EMPLOYMENT, THEN YOU CAN GO THROUGH VOCATIONAL

7    TRAINING OR WORK FORCE DEVELOPMENT AS INDICATED AND APPROVED

8    BY THE PROBATION OFFICE.

9        PARAGRAPH 14 OF YOUR PLEA AGREEMENT SUGGESTS -- WELL

10   STATES THAT YOU AGREE TO WAIVE THE RIGHT TO CONTEST EITHER

11   CONVICTION OR THE SENTENCE.  DOES NOT INCLUDE PROSECUTORIAL

12   MISCONDUCT, INEFFECTIVE ASSISTANCE OF COUNSEL, OR CHANGES IN

13   THE LAW THAT ACTUALLY BENEFIT YOU.

14       IF YOU WISH TO APPEAL, IT NEEDS TO BE DONE TIMELY

15   THROUGH YOUR LAWYER OR YOURSELF IN ACCORDANCE WITH FEDERAL

16   RULES OF CRIMINAL PROCEDURE OR ANY RELEVANT STATUTES.

17       DO YOU UNDERSTAND YOUR RIGHT TO APPEAL?

18           *THE DEFENDANT:*  YES, MA'AM.

19           *THE COURT:*  AND THIS IS SUFFICIENT BUT NOT GREATER

20   THAN NECESSARY TO ACHIEVE THE SENTENCING FACTORS.  I DO

21   BELIEVE THE SENTENCING WAS -- GUIDELINES WERE CALCULATED

22   APPROPRIATELY, BUT I BELIEVE UNDER THE TOTALITY OF THE

23   CIRCUMSTANCES, THAT THIS IS A SENTENCE THAT I WOULD HAVE COME

24   TO.

25       ANY OBJECTION TO THE FORM?

```
1              MS. RICHARDSON:  NO, YOUR HONOR.

2              MR. KENDRICK:  NO, YOUR HONOR.

3              THE COURT:  OKAY.  AND IS THERE AN ORDER OF

4    FORFEITURE IN THIS CASE?

5              MS. RICHARDSON:  YOUR HONOR, I BELIEVE THERE WAS.

6              THE COURT:  OKAY.  SO THEN THE COURT WILL GO AHEAD

7    AND GRANT THAT ORDER.  AND THEN FINALLY, DOES THE GOVERNMENT

8    HAVE ANY ADDITIONAL COUNTS TO DISMISS?

9              MS. RICHARDSON:  YES, YOUR HONOR.  WE MOVE TO

10   DISMISS.

11             THE COURT:  OKAY.  MOTION IS GRANTED.  THANK YOU.

12   THAT CONCLUDES THE HEARING.

13             MR. KENDRICK:  THANK YOU, JUDGE.

14             MS. RICHARDSON:  THANK YOU.

15        (HEARING CONCLUDED.)

16                         ***

17        I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

18   FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

19

20        S/KATHLEEN RICHARDSON

21        _____        JUNE 26, 2019

22        KATHLEEN RICHARDSON, RMR, CRR

23

24

25
```